UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD DONALD BURLEY,

        Plaintiff,

v.

UNKNOWN MILLER,
*et al.*,

        Defendants.
_____/

Case No. 1:17-cv-966

Hon. Ray Kent

**OPINION**

This is a *pro se* civil rights action brought by a prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on plaintiff's motion for summary judgment (ECF No. 61).

**I.**    **Background**

Plaintiff filed this action in the United States District Court for the Eastern District of Michigan. Plaintiff alleged in pertinent part as follows:

> On 11-11-13 I was ordered by both CO Miller and CO Heilman to stand outside building #300 in freezing rain, where I had a valid intinerary [sic] to be in building at the time of order. Both CO Miller and Heilman had prior knowledge of my history of respirator complications/illness. Both defendants' [sic] gave me a distinct and specific order to stand out in the freezing rain when they had knowledge or should have known it was raining at the time of the order. I sustained both physical and psychological injuries of being treated inhumanely by these defendants. Special Acts Director Bosworth was immediately made aware of the order to stand out in the rain, however he endorsed the officer's orders by directly telling me "Its not gonna hurt you to stand out in the rain."

Compl. (ECF No. 1, PageID.4). In addition, plaintiff sued Capt. Barker because he knew about the problem. *Id*. Plaintiff also alleged retaliation against CO Miller and Heilman "for exercising

1

my right to file a grievance." *Id.*[1] In his statement of claim, plaintiff alleged that defendants had "personal involvement in forcing me to stand out in the freezing rain" and that he "suffered pneumonia and other respiratory complications as a direct result of being exposed to extreme weather conditions by these defendants." *Id*. at PageID.5.

Defendants moved for summary judgment. The magistrate judge recommended granting the motion for the following reasons: (1) while a question of fact exists as to whether CO Miller and CO Heilman were subjectively aware that ordering plaintiff to stand out in the freezing rain (as alleged) subjected him to a substantial risk of harm and whether they disregarded that risk, these two defendants are entitled to qualified immunity because the law was not clearly established "that ordering a prisoner with a respiratory condition to stand in freezing rain for a short period of time amounts to a constitutional violation"; (2) plaintiff did not meet the subjective component of an Eighth Amendment claim against defendant Bosworth, because plaintiff did not claim that Bosworth was aware of his respiratory issues or personally involved in the incident; (3) plaintiff provided no evidentiary link between his filing of prior grievances and the alleged retaliation; (4) plaintiff failed to serve Capt. Barker and acknowledged that Barker was not a proper defendant. Report and Recommendation (R&R) (ECF No. 22).

The R&R was adopted without objection. *See* Order (ECF No. 23). The court later vacated the order when plaintiff filed objections because the objections were timely under the prison mailbox rule. Order (ECF No. 28). The court ruled on those objections in an opinion and order dated March 13, 2017 (ECF No. 31) which reversed the magistrate judge's conclusion that defendants were entitled to qualified immunity. In reaching that determination, the court recited additional facts that plaintiff's housing unit was 40 yards from the school building, that he was not

---

[1] The Court notes that the complaint also mentioned Warden Smith. However, he was never served or listed on the docket sheet as a defendant in this action.

allowed to return to his housing unit, and that once admitted into the building he was not allowed to change clothes and was forced to sit in his saturated clothing for two hours. The district court stated that the magistrate judge "ignored" those aspects of plaintiff's complaint in completing her qualified immunity analysis. Opinion and Order at PageID.267.[2] Ultimately, the district court concluded that defendants were not entitled to qualified immunity stating that:

> Here, Burley was ordered to stand in freezing rain for 10 to 12 minutes. He was expelled from the school building and prevented from returning to his housing unit 40 yards away to seek shelter. The magistrate judge characterized that exposure as "a short period of time," which, in isolation, perhaps it was. But there was no "penological justification" for that conduct, and in light of Burley's medical condition, it can fairly be said that "the officials involved acted with 'deliberate indifference' to the inmates' health . . . ." *Hope* [*v. Pelzer*, 536 U.S. 730, 737 (2002)]. What's more, though, is that the defendants required Burley to remain in his saturated clothing for another two hours instead of allowing him to return to his housing unit to change into dry clothing. Additionally, the defendants knew of Burley's respiratory conditions, which made him particularly susceptible to harm from exposure to severe cold conditions. The combination of circumstances "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as . . . warmth . . . ." *Wilson* [*v. Seiter*, 501 U.S. 294, 304 (1991)].
>
> When viewing the record in the light most favorable to Burley, it is clear that he has shown that the right to be free from exposure to severe weather and temperatures was clearly established at the time of the incident alleged in the complaint. Defendants Miller and Heilman, therefore, are not entitled to qualified immunity at this stage of the case.

*Id.* at PageID.279-280. The district judge also concluded that because defendant Bosworth was involved in the incident and knew about plaintiff's respiratory condition, he was in the same position as CO Heilman and CO Miller. *Id.* at PageID.281. Finally, the district judge affirmed the balance of the R&R.

The court entered a scheduling order which included a discovery cutoff date ("All Discovery Responses Due") of September 11, 2017, and a dispositive motion cutoff date of

---

[2] The court did not cite the source of these additional facts, which were not alleged in plaintiff's complaint. *See* Compl. (ECF No. 1).

October 13, 2017. *See* Order (ECF No. 34). *Pro Bono* counsel appeared to represent plaintiff on July 11, 2017. *See* Appearance and Witness List (ECF Nos. 44 and 45). Upon stipulation of the parties, the court entered an order extending the discovery cutoff, i.e., the date discovery responses are due to October 1, 2017. Order (ECF No. 48, PageID.339).[3] A "text-only order" entered on October 13, 2017, extending the dispositive motion deadline to November 13, 2017. However, the case was transferred to the Western District of Michigan on November 7, 2017. *See* Order (ECF No. 17). Plaintiff filed a motion for summary judgment on November 13, 2017, which is now before the Court.

##### II. Plaintiff's motion for summary judgment

##### A. Legal standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

---

[3] The Court will re-visit this order when it addresses plaintiff's contention that defendants failed to respond to requests for admission.

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B. Failure to Exhaust

### 1. Exhaustion requirement

In their response, defendants contend that some of plaintiff's claims are barred for lack of exhaustion. The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).

5

"Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

3. **Discussion**

a. **Defendant Bosworth**

In his response to plaintiff's motion for summary judgment, defendant Bosworth points out that plaintiff did not file a grievance against him with respect to this incident.[4] The relevant grievance, DRF-13-11-2320-17i ("2320"), is directed against CO Heilman and CO Miller. Grievance 2320 (ECF No. 14-5, PageID.84). In this grievance, plaintiff stated as follows: claims that on November 11, 2013, he arrived at the school building at 11:10 a.m. for the Bridge Builders Program which ran from 11:15 to 12:45. *Id*. When he entered the building, CO Heilman and Miller told him "to stand out in the 33 degree temperature in nearly freezing rain." *Id*. Plaintiff continued:

> On 11/11/13 I had an internary [sic] to attend the Bridge Builders Program from 11:15-12:45. (See Exhibit A). I entered the school bldg. at approx. 11:10, but was told by CO Heilman and Miller to stand out in the 33 degree temperature in nearly freezing rain. CO Miller replied when I asked to stand in the school until the volunteers came, stated, "We are not babysitting anyone today, so go and stand outside in the rain." I complied with this unreasonable command as policy states. I grieve the fact that I have been treated inhumanely and that <u>both</u> CO Heilman and Miller subjected my health and safety in jeopardy by knowingly making me stand in the rain in nearly freezing temperatures. I also complain that PD 03.03.130 has been violated by the aforemention custody staff by forcing me to stand outside in the rain in freezing temperatures. I have cronic [sic] asthama [sic], empahsima [sic], and other breating [sic] conditions which I take two (2) different medications and Advair to help me breath [sic]. I am not supposed to be made to stand in the freezing rain for any period of time, esp. when my internary [sic] permits me to be in the building at that time. I have been subjected to cruel and unusual punishment by these two (2) persons. I seek disciplinary sanctions against the two and a memorandum issued to permit me to attend my call outs on a timely manners [sic] as policy mandates. I fear that these two people will retaliate against me for tiling

---

[4] Plaintiff contends that "[a] failure to exhaust defense is waived when raised for the first time in a motion for summary judgment or in a response to a motion for summary judgment," PageID.775. However, the Sixth Circuit has stated that "[a] district court may, in its discretion, allow a defendant to raise an affirmative defense for the first time in a motion for summary judgment if doing so does not result in surprise or prejudice to the plaintiff." *Lauderdale v. Wells Fargo Home Mortgage*, 552 Fed. Appx. 566, 573 (6th Cir. 2014). There has been no surprise of prejudice to plaintiff in this case. Defendants have not yet been directed to file an answer. *See* 42 U.S.C. § 1997e(g)(1) ("Any defendant may waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983 . . . such waiver shall not constitute an admission of the allegations contained in the complaint.").

>this grievance againt [sic] them.  I seek as a remedy that a canolopy [sic] be constructed over the schllol [sic] building, so prisoners are not subjected to made to wait n [sic] the rain.

*Id.* (emphasis in original).

It is clear that plaintiff directed this grievance against two individuals, CO Heilman and CO Miller.  Plaintiff did not grieve any action taken by defendant Bosworth.  Rather, plaintiff mentions Bosworth as the person whom he contacted "to resolve this issue" involving Heilman and Miller.  *Id.*  Based on this record, plaintiff failed to properly exhaust a grievance against defendant Bosworth.  *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, plaintiff's claim is barred and defendant Bosworth will be dismissed from this case for lack of proper exhaustion.

### b. Plaintiff's claim that he was not allowed to change clothes

Defendants also contend that plaintiff failed to exhaust any claim that defendants refused to let him change out of his wet clothes.  As discussed, this Eighth Amendment claim (that defendants engaged in cruel and unusual punishment by depriving plaintiff of the identifiable human need of warmth) became part of plaintiff's case when the court concluded that defendants were not entitled to qualified immunity.  *See* Opinion and Order at PageID.279.  However, the relevant grievance (no. 2320) did not include this separate claim that CO Heilman or CO Miller engaged in cruel and unusual punishment by forcing him to sit in wet clothes for two hours.  Based on this record, plaintiff did not exhaust a separate Eighth Amendment claim against these two defendants for refusing a request to change clothes. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93.  Accordingly, plaintiff's claim that defendants violated his Eighth Amendment rights by forcing him to sit in wet clothes for two hours is barred and this claim will be dismissed for lack of proper exhaustion.

### C. Plaintiff's Eighth Amendment claim

### 1. Legal standard

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which "provides a civil cause of action for individuals who are deprived of any rights, privileges, or immunities secured by the Constitution or federal laws by those acting under color of state law." *Smith v. City of Salem, Ohio*, 378 F.3d 566, 576 (6th Cir. 2004). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

Here, plaintiff has alleged that defendants CO Heilman and CO Miller violated his rights under the Eighth Amendment. The Supreme Court has held that "the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To prove this claim, the plaintiff must show (1) that the alleged deprivation is "sufficiently serious" (the objective component) and (2) that the responsible prison official had a sufficiently culpable state of mind (the subjective component). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish the objective component, the plaintiff must demonstrate that the prison official's act or omission resulted in the denial of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). To establish the subjective component, the plaintiff must demonstrate that the prison official acted with "'deliberate indifference' to inmate health or safety." *Farmer*, 511 U.S. at 834.

For purposes of this motion, the Court will adopt the framework as set forth in the March 13, 2017 Opinion and Order. First, there was no penological justification for defendants CO Heilman and CO Miller to order plaintiff to stand in freezing rain for 10 to 12 minutes, expel

9

plaintiff from the school building, and prevent plaintiff from returning to his housing unit 40 yards away. Second, defendants acted with deliberate indifference to plaintiff's health because they knew that plaintiff suffered from respiratory conditions which made him particularly susceptible to severe cold conditions. *See* PageID.279.

**2. Discussion**

**a. Genuine issues of fact preclude entry of summary judgment**

Given this framework, the record reflects that genuine issues of material fact exist which preclude the entry of summary judgment in favor of plaintiff. Those factual disputes include: whether plaintiff was adequately protected from the weather during the 10 to 12 minutes he was outside the building; whether defendants CO Heilman and CO Miller ordered plaintiff to stand in the freezing rain; whether the two defendants expelled plaintiff from the school building; whether plaintiff could wait in the school building before his class started; whether defendants prevented plaintiff from returning to his housing unit; and whether defendants were aware of plaintiff's respiratory conditions. The Court will list some of the disputed facts.

With respect whether he was adequately protected from the weather, plaintiff testified that he was wearing a state-issued coat, gloves, and hat on the date of the incident. Burley Dep. (ECF No. 61-2, PageID.484).

With respect to whether plaintiff could wait in the school building, Warden Smith testified that there is a rule against loitering in the school and that prisoners are not allowed in the classrooms if the teacher is not there. Smith Dep. (ECF No. 61-3, PageID.505, 509).

With respect to whether plaintiff could wait in the school building, Captain Kilcherman testified that:

> I was a captain at this facility a long time, and we don't allow prisoners to hang out inside the school building, period. It's a dangerous environment in there.

Kilcherman Dep. (ECF No. 61-4, PageID.552). The classrooms are locked when the teachers are not present. *Id*. at PageID.539. Kilcherman further testified that prisoners would line up to wait until the building was unlocked or go back to their units:

> I remember prisoners waiting outside all the time, and they had an option to stand there. Most of them would go back to their units. If the doors weren't unlocked and they arrived, there's a reason. So they would wait until they're unlocked. If the weather was bad, they'd simply go back to their units. From the units, they can see that building, wide open.

*Id*. at PageID.552. Kilcherman stated that "many times prisoners would stack up outside that door" and that he didn't remember ever seeing anybody waiting in the rain "because they go back." *Id*.

With respect to prisoner health matters, Kilcherman testified that his staff normally does not know about prisoner health issues because the health care department is not allowed to tell officers about prisoner health problems due to HIPAA. *Id*. at PageID.553. For this reason, "we just have to go by what the prisoners tell us." *Id*.

With respect to his actions, defendant CO Heilman testified as follows. His job was in the school and that he was familiar with plaintiff, having seen him at the school building "at least two or three times a week." Heilman Dep. (ECF No. 61-5, PageID.577-578). If a teacher is not in the room, they make the prisoners wait outside the building. *Id*. at PageID.584-585. They always make the prisoners stay outside when the teacher is not there, in his words "[e]ither stay outside or go back to the unit." *Id*. at PageID.585. While plaintiff could arrive at the school early, he could not come in the building if the teacher was not there. *Id*. at PageID.585-586. Heilman stated that he did not have a conversation with the plaintiff other than to tell him to stay outside. *Id*. at PageID.588. In Heilman's words, "I told him he had to wait outside." *Id*. at PageID.593.

Heilman did not remember shaking plaintiff down and finding an inhaler. *Id*. If he found an inhaler, he would not address it because "a lot of inmates have inhalers." *Id*. In this

11

regard, Heilman stated that he does not know the symptoms of asthma. *Id*. Plaintiff did not tell Heilman that he had asthma and Heilman did not recall plaintiff showing him an asthma inhaler. *Id*. at PageID.588.

With respect to his actions, defendant CO Miller testified as follows. He was familiar with plaintiff due to his attendance at Bridge Builders. Miller Dep. (ECF No. 61-6, PageID.618-619). As a school officer, Miller had a desk which is located on the south side of the school where prisoners check in and out of the building. *Id*. at PageID.616, 618. He would spend time at the desk and making rounds. *Id*. at PageID.616-618. Plaintiff was at the school on November 11, 2013 to attend Bridge Builders. *Id*. at PageID.619. Miller does not recall having a conversation with plaintiff. *Id*. In Miller's words, "He come in there, and we told him he had to go back outside and wait for the volunteers to show up." *Id*. Plaintiff was polite most of the time, except for when he showed up early for a callout. In Miller's words, "if he'd show up early to a callout, we'd tell him he'd have to wait outside, he popped an attitude on us." *Id*.

Even if the prisoners had a callout for a class at 11:15 a.m., if the volunteers were not present at that time, the prisoners would have to wait outside until the volunteers got to the school. *Id*. at PageID.620. Miller testified that it is unsafe to have prisoners "milling about" in the school. *Id*. at PageID.627. The hallway is only 6 or 7 feet wide; with teachers, prisoners, and staff a person has to walk through 30 people "elbow to elbow." *Id*. There is a history of assaults in the school. Miller recalled that prisoners in the Bridge Builders group stabbed another guy walking down the hallway. *Id*. Miller also stated that "[y]ou can't see down the hall, I mean, when you've got 20, 30, 40 people walking down the hall." *Id*.

Miller denied telling plaintiff that he could not go back to his unit. *Id*. Miller testified that plaintiff could have gone back to his unit instead of standing in the rain. *Id*. With

respect to plaintiff's medical condition, Miller testified that the health care department does not tell custody staff about a prisoner's medical needs, other than by notifying the unit staff with a medical detail, for example, that a prisoner needs a bottom bunk detail due to a bad back. *Id*. Miller further testified that plaintiff never showed him an inhaler. *Id*.

In summary, the record reflects that genuine issues of material fact exist with respect to whether defendants CO Heilman and CO Miller acted with deliberate indifference to plaintiff's health on November 11, 2013. Accordingly, plaintiff's motion for summary judgment will be denied.

>   **b.     The requests for admissions**

In their motion, plaintiff states that defendants did not respond to requests for admission, and that the following facts should be deemed admitted under Fed. R. Civ. P. 36:

> that Mr. Burley permissibly arrived at the school building on November 11, 2013 ten minutes before the Bridge Builders class started; that Defendants ordered Mr. Burley to wait outside the building; that it was raining at the time; that Mr. Burley was not permitted to return to his housing unit at that time; that Defendants had shaken Mr. Burley down before November 11, 2013 and were aware that he possessed an inhaler; and that Mr. Burley told one or more Defendants of his respiratory conditions, including asthma, at the time he was ordered to stand outside the school building.

Plaintiff's Brief (ECF No. 61, PageID.469).

As discussed, the court extended the discovery cutoff (the date discovery responses were due) to October 1, 2017. Defendants contend that the 20 requests for admission (10 requests for defendant Heilman and 10 requests for defendant Miller) were untimely because the responses were not due until after the discovery cutoff date. Fed. R. Civ. P. 36 provides in pertinent part:

> **(3) Time to respond; Effect of not responding.**  A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.

13

Fed. R. Civ. P. 36(a)(3).

Under the facts of this case, defendants were not required to respond to the requests for admissions. First, it is unclear when plaintiff served the requests because plaintiff did not file a certificate of service. Second, the copies of plaintiff's requests for admissions to defendant Miller (ECF No. 61-12, PageID.704-708) and defendant Heilman (ECF No. 61-12, PageID.710-714) reflect that they were incorporated with other discovery in plaintiff's "second set of discovery requests" which was dated September 5, 2017. Assuming that the requests were served on that date, they were untimely because the discovery responses were due after the discovery cutoff date of October 1, 2017.[5] Accordingly, the requests for admission are not deemed admitted by defendants.

### c. Qualified immunity

Defendants have re-asserted their affirmative defense of qualified immunity which the court previously rejected. *See* Opinion and Order at PageID.283-284. There is no basis for the Court to reconsider the prior ruling because genuine issues of material fact exist which preclude a grant of qualified immunity. *See, e.g., Lyttle v. Riley*, 524 Fed. Appx. 226, 228 (6th Cir. 2013) ("We cannot grant qualified immunity to [the defendant] because disputed issues of material fact preclude a determination of whether a constitutional violation occurred."). Accordingly, defendants' re-assertion of the defense of qualified immunity will be denied.

### III. Conclusion

For these reasons as stated in this opinion,

A. Plaintiff's motion for summary judgment (ECF No. 61) will be **DENIED**.

---

[5] Assuming that requests were served on September 5th, depending on the method of service, the responses would have been due either October 5th or October 9th. *See* Fed. R. Civ. P. 6.

B. Plaintiff's claims against defendant Bosworth are **DISMISSED** for lack of exhaustion.

C. Plaintiff's claim that defendants Heilman and Miller refused to allow him to change out of his wet clothes is **DISMISSED** for lack of exhaustion.

D. This case will proceed to trial on plaintiff's Eighth Amendment claim that defendants Heilman and Miller were deliberately indifferent to his health and safety when they ordered him to stand in the rain.

Dated: September 27, 2018 /s/ Ray Kent
United States Magistrate Judge